UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

SIDNEY LEE CALDWELL, JR.,

                    Petitioner,              Case No. 1:15-cv-1057

v.                                     Honorable Robert J. Jonker

THOMAS MACKIE,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Sidney Lee Caldwell, Jr., is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility in Manistee, Michigan. Petitioner is serving three concurrent terms of 25 to sixty years. On October 7, 2013, a Berrien County jury convicted him on three counts of first-degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(a). In his *pro se* petition, Petitioner raises five grounds for relief, which can be summarized as follows:

> I.     Petitioner's conviction should be overturned because there was insufficient credible evidence at trial to prove him guilty of the charged crimes.
>
> II.    The trial court denied Petitioner a fair trial and his due process rights by not properly ensuring the reliability or accuracy of expert testimony before it was introduced into evidence.
>
> III.   The prosecutor's actions denied Petitioner a fair trial and his due process rights under the Michigan and federal constitutions.
>
> IV.   Petitioner received ineffective assistance of trial counsel.

V.    Petitioner's constitutional due process rights, right to present a defense, and right to proper notice were violated because of the length of time covered by the information (over 2.9 years), the lack of specificity of when the specific events took place, and that the events could have taken place long prior to the dates charged in the information (any time during a period of about 6 years).

(Pet., ECF No. 1, PageID.6-7, 9-10, 15.) Respondent has filed an answer to the petition (ECF No. 5), stating that the grounds should be denied because they have been procedurally defaulted, are not cognizable on habeas review, or are meritless. Upon review and applying the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA) standards, I find that the grounds are noncognizable or without merit. Accordingly, I recommend that the Court deny the petition.

## Discussion

### I.    <u>Factual allegations</u>

Petitioner was found guilty of three instances of CSC-I against his brother's step-son, DB, when DB was under the age of 13 years. The three sexual penetrations – Petitioner's penis into DB's mouth, Petitioner's mouth on DB's penis, and Petitioner's penis into DB's anus – allegedly occurred on the same day at the home of Petitioner's mother and DB's step-grandmother. DB testified that all three penetrations occurred in Petitioner's bedroom. DB was unable, however, to specify his age at the time. (Trial Tr. I, ECF No. 6-4, PageID.434-437, 447.) DB's sister, who was one year younger than DB, witnessed one of the penetrations: Petitioner's penis into DB's mouth. (*Id.*, PageID.482.) She testified that DB was in Petitioner's

bedroom at the time. (*Id*.) She ran and told her mother. (*Id*., 482-483.) When DB's sister and mother returned to the room, DB's sister witnessed a different penetration: Petitioner's penis into DB's anus. (*Id*., PageID.483.)

DB's mother testified that she was in the basement when DB's sister sought help. (*Id*., PageID.517.) She said she encountered DB and Petitioner in the living room and that Petitioner was forcing DB's mouth onto Petitioner's penis. (*Id*., PageID.517-518.) DB's mother started poking Petitioner with a broom. (*Id*., PageID.517, 521.) When Petitioner grabbed the broom she attempted to scratch Petitioner's eyes. (*Id*., PageID.521-522.) Then Petitioner's mother returned home. (*Id*., PageID.522.) She told DB's mom not to tell anyone. (*Id*.) DB's mother, accordingly, instructed DB and his sister not to tell anyone what had occurred. (*Id*.)

The criminal sexual conduct remained a secret until years later when DB's foster mother overheard an argument between DB and his sister that included references to the incident. (*Id*., PageID.503-505.) She reported what she heard to the Department of Social Services (DSS). (*Id*., PageID.505.) She was directed to take the children to the Children's Assessment Center for a forensic interview. (*Id*., PageID.506.)

The children were interviewed at the Children's Assessment Center by Brooke Rospierski. (Trial Tr. II, ECF No. 6-5, PageID.553.) Ms. Rospierski testified that she conducted a forensic interview of DB and his sister. (*Id*., PageID.553.) She also testified as an expert with regard to forensic interviewing of children. (*Id*.,

3

PageID.548.)  Ms. Rospierski indicated that she had previously testified as an expert in Berrien County.  (*Id*.)  Petitioner's counsel did not object to Ms. Rospierski's qualifications as an expert, noting that he was familiar with Ms. Rospierski's qualifications.  (*Id*.)  The prosecution did not ask specific questions about the interviews of DB or his sister.  The prosecutor did ask, however, several questions with regard to how sexually-abused children might respond in forensic interviews.

After DB's foster mother called the DSS, the DSS referred the matter to Detective Wes Smigielski.  (*Id*., PageID.569-570.)  Detective Smigielski testified that he was present for the interviews of DB and his sister at the Children's Assessment Center.  (*Id*.)  Three weeks after those interviews, Detective Smigielski arrested Petitioner and interviewed him at the police station.  (*Id*., PageID.576-580.)  Petitioner denied DB's accusations (*Id*., PageID.583), but eventually offered some explanation as to why DB's mother might have thought something inappropriate occurred (*Id*., PageID.585-586).

After Detective Smigielski testified, the prosecution rested.  Petitioner's counsel moved for a directed verdict because the stories of DB, his sister, and their mother were hopelessly inconsistent.  (*Id*., PageID.603-608.)  The witnesses could not agree on the time of year the incident occurred, DB's age when the incident occurred, the location in the house where the incident occurred, or whether the curtains and door were open when the incident occurred.  (*Id*.)  The court denied the motion concluding that, despite the inconsistencies, there was testimony in the record that,

construed most favorably to the prosecution, could support a verdict of guilty beyond a reasonable doubt as to each count charged. (*Id.*, PageID.609-614.)

The defense rested without calling any witnesses. The court instructed the jury. The jurors deliberated for less than an hour before returning verdicts of guilty on all three CSC-I charges. (*Id.*, PageID.669-671.) On October 7, 2013, the trial court sentenced Petitioner to three concurrent sentences of 25 to 75 years. (Sentencing Tr., ECF No. 6-7.) The statutory mandatory minimum sentence was 25 years' incarceration.

With the assistance of counsel, Petitioner appealed his conviction to the Michigan Court of Appeals, raising four grounds for relief: (1) sufficiency of the evidence; (2) violation of due process through the improper introduction of expert evidence and inadequate instruction; (3) prosecutorial misconduct; and (4) ineffective assistance of counsel. In a lengthy unpublished opinion, issued February 10, 2015, the court of appeals rejected all appellate arguments and affirmed the convictions. (Mich. Ct. App. Op., ECF No. 6-8, PageID.699-706.)

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, raising the same four grounds, together with a new issue: whether Petitioner's rights to due process, to present a defense, and to proper notice were violated by the lack of specificity in the information and the lengthy passage of time. (Pet'r's Appl. for Leave to Appeal, ECF No. 6-9, PageID.836-840.) The supreme court

denied leave to appeal by order entered September 9, 2015. (Mich. Ord., ECF No. 6-9, PageID.834.)

On October 8, 2015, Petitioner filed his application for habeas relief in this Court raising the five issues he raised in his application for leave to appeal to the Michigan Supreme Court.

II. <u>AEDPA standard</u>

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*,

529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad

discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S.
___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Sufficiency of the evidence

Petitioner contends here, as he did in his directed verdict motion in state court, that the testimony is too inconsistent and incredible to support a finding of guilt beyond a reasonable doubt. The Michigan Court of Appeals flatly rejected Petitioner's argument:

> Caldwell contends that the evidence was not sufficient to sustain his convictions because the witnesses' testimonies were inconsistent, impeached, and confusing. We disagree.
>
> A defendant's claim that the evidence was insufficient invokes the defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We review the evidence in a light most favorable to the prosecutor to determine whether a trier of fact could find that the

prosecutor proved the crime's elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

To prove the elements of MCL 750.520b(1)(a), the prosecutor must provide evidence that the defendant sexually penetrated another person when the other person was under 13 years of age. *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). The victim's testimony alone may sufficiently support a CSC conviction. *People v Phelps*, 288 Mich App 123, 132; 791 NW2d 732 (2010); MCL 750.520h. This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Eisen*, 296 Mich App at 331. We must defer to the trier of fact's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the [trier of fact] could not believe it, or contradicted indisputable physical facts or defied physical realities . . . ." *People v Lemmon*, 456 Mich 625, 645–646, 647; 576 NW2d 129 (1998).

In this case, the witnesses' testimonies conflicted in some ways. For instance, [DB's mother] testified that the sexual assault occurred in the living room, while the children testified that it occurred in the bedroom. And the victim's testimony was internally inconsistent at times. However, we conclude that the testimony was not so thoroughly impeached that it had no probative value. We defer to the jury's determination of the witnesses' credibility.

Viewed in the light most favorable to the prosecutor, the testimony of the victim and other witnesses support Caldwell's convictions. The victim was under the age of 13 at the time of the incident. The victim, the victim's sister, and [the victim's mother] all testified that the victim performed fellatio on Caldwell. The victim and the victim's sister testified that Caldwell penetrated the victim anally. And the victim testified that Caldwell performed fellatio on him. We conclude that the evidence sufficiently supported Caldwell's convictions of three counts of CSC I.

(Mich. Ct. App. Op., ECF No. 6-8, PageID.700-701.)

The court of appeals' statement of the sufficiency standard is entirely

consistent with clearly established federal law. A Section 2254 challenge to the

9

sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and the AEDPA apply to Petitioner's claims, " 'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.' " *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

10

This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals, although relying upon state authority, applied the *Jackson* standard in resolving Petitioner's claim. It examined the evidence supporting the conviction – specifically the testimony of DB, his sister, and his mother – with reference to the elements of the crime under state law, in a light most favorable to prosecution, leaving credibility determinations to the jury. Thus, it cannot be said that the state court's determination is inconsistent with, or contrary to, *Jackson*. Nor can it be said that the state court's factual determinations in applying the standard are unreasonable. Whatever inconsistencies may have existed between the testimonies of the witnesses, there were no inconsistencies regarding the facts that the victim was under the age of 13 years, that Petitioner was over the age of 17 years, and that there were three separate sexual penetrations.

Petitioner does not even attempt to find fault with the state court's application of the *Jackson* standard or its factual findings. Instead, he simply views the same evidence in a light that favors him, and using that to reach different conclusions. Petitioner's entire argument depends on rejecting the testimony of DB, his sister, and his mother because, according to Petitioner, that testimony is inconsistent and thus incredible. This Court is not permitted to make such assessments of credibility on habeas review. *Herrera*, 506 U.S. at 401-02. It is Petitioner's argument not the state

court's determination that is a patently unreasonable application of the *Jackson* standard. The Michigan courts' conclusions that there was sufficient evidence to support Petitioner's convictions is consistent with *Jackson* and well supported by the record. Petitioner's challenge to the sufficiency of the evidence has no merit.

IV.    Errors with respect to the testimony of expert Brooke Rospierski

Petitioner raises several challenges to the introduction of the expert testimony of Brooke Rospierski:

A.    The testimony offered was not the proper subject of expert opinion testimony because it is not amenable to the application of reliable principles and methodology to reach an opinion.

B.    Even if it were a proper subject of expert testimony, the testimony was more prejudicial than probative because it covered circumstances that were not involved in the case.

C.    The testimony was not offered for the limited purposes permitted under Michigan case law; thus, the trial court improperly instructed the jury as to how it might consider the expert testimony.

(Pet'r's Br. on Appeal, ECF No. 6-8, PageID.755-764.) While Petitioner offers the objections under the auspices of a due process challenge to the fairness of his trial, they are principally state law claims.

A.    Propriety of expert testimony regarding forensic interviewing

Petitioner essentially contends that forensic interviewing is not enough of a science to permit expert testimony. The authorities Petitioner cites in support of his argument do not address the United States Constitution. Instead, Petitioner relies upon Michigan Rule of Evidence 702, Michigan cases regarding the rule, *Gilbert v.*

12

*Daimler Chrysler Corp.*, 685 N.W.2d 391 (Mich. 2004), and *People v. Coy*, 620 N.W.2d

888 (Mich. Ct. App. 2000), and federal cases interpreting the analogous federal rule,

*Daubert v. Merrill Pharmaceutical Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. Ltd.*

*v. Carmichael*, 526 U.S. 137 (1999).

The Michigan Court of Appeals concluded that the testimony was admissible

under Michigan Rule of Evidence 702:

> MRE 702 requires the trial court to ensure that the testimony is reliable. *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007). "Expert testimony may be excluded when it is based on assumptions that do not comport with the established facts or when it is derived from unreliable and untrustworthy scientific data." *Id.* The mental health field is a discipline of specialized knowledge; behavioral scientists and clinicians specialize in the treatment and study of victims of child sexual abuse. *People v Beckley*, 434 Mich 691, 718; 456 NW2d 391 (1990). Such evidence is sufficiently reliable if it is "really only an opinion of the expert based on collective clinical observations of a class of victims[.]" See *Id.* at 721. This is particularly true when there is no suggestion at trial that the expert's observations were based on unreliable principles and methods. See *In re Noecker*, 472 Mich 1, 12; 691 NW2d 440 (1995).

> In this case, Rospierski testified that she has a master's degree in social work. Rospierski worked as a forensic interview specialist at the Children's Assessment Center, worked for four years as a therapist for victims of sexual abuse, and worked three years as a Children's Protective Services specialist. During her career, Rospierski had over 400 hours of training in forensic interviewing, performed over 1,500 forensic interviews for the Children's Assessment Center, and performed over 3,000 interviews as a child protective services specialist. Rospierski testified about common and uncommon behaviors on the basis of her observations of children during thousands of interviews. Defense counsel did not contend at trial that Rospierski based her observations on unreliable principles and methods. We conclude that the trial court did not plainly err by admitting Rospierski's testimony. It was sufficiently reliable as an expert opinion based on her collective clinical observations as a children's forensic interviewer.

(Mich. Ct. App. Op., ECF No. 6-8, PageID.702.) That determination is binding on this Court. *Stumpf v. Robinson,* 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.")). Thus, the expert testimony was properly admitted under Rule 702 of the Michigan Rules of Evidence.

Moreover, whether or not the expert testimony would be admissible under Federal Rule of Evidence 702 or *Daubert* is immaterial on habeas review. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998) ("*Daubert* concerned the Federal Rules of Evidence which is not relevant to [federal habeas review of] appellant's [state court] conviction.") As this Court stated in *Bal v. McKee*, No. 1:10-cv-21, 2010 WL 707356 (W.D. Mich. Feb. 23, 2010):

> [T]he Federal Rules of Evidence apply in federal trial proceedings, not in state trial proceedings. The Supreme Court strictly engaged in statutory construction in interpreting Rule 702 in *Daubert*. *See* 509 U.S. at 587. The [Supreme] Court has never indicated that a failure to follow Federal Rule of Evidence 702 or *Daubert* rises to the level of a constitutional violation. As a consequence, Petitioner cannot show that the state court's evidentiary determination was either contrary to or an unreasonable application of established Supreme Court precedent.

*Bal*, 2010 WL 707356 at *12. Petitioner's argument here suffers the same fate: even if the evidence runs afoul of Rule 702 of the Federal Rules of Evidence or *Daubert*, such a violation does not rise to the level of a constitutional violation cognizable on habeas review.

14

B.    <u>More prejudicial than probative</u>

Petitioner contends that satisfying the requirements of Rule 702 is not enough where, as Petitioner argues here, the evidence is more prejudicial than probative under Michigan Rule of Evidence 403.  The Michigan Court of Appeals rejected that claim as well:

> MRE 403 provides that even relevant evidence is inadmissible if its probative value is substantially outweighed by its prejudicial effect. The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).  It is particularly important that the appellant preserve challenges to evidence under MRE 403 because the trial court is in the best position to assess the relative weight of the evidence's probative value and prejudicial effect.  *Id*.  A general fear of prejudice does not render evidence inadmissible, nor does the fact that evidence is damaging. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995).
>
> *   *   *
>
> In this case, defense counsel contended in opening statements that the victim's delayed disclosure was problematic for the prosecutor. Caldwell used the victim's delayed disclosure, failure to call for help, and Caldwell's open door and window to attack the victim's credibility. Rospierski testified that child victims of sexual abuse do not always cry for help, that children often delay disclosing the abuse, and that offenders often engage in high-risk behavior.  Rospierski's testimony was relevant because it assisted the trier of fact to determine whether the victim's behavior was inconsistent with other victims of child sexual abuse.  And there is no indication that the evidence was only marginally probative or that the jury may have given it undue or preemptive weight.  We conclude that the trial court did not plainly err by admitting Rospierski's testimony.

(Mich. Ct. App. Op., ECF No. 6-8, PageID.701-702.)  Once again, the state court's conclusion with regard to the admissibility under Michigan Rule of Evidence 403 is conclusive.

Under the AEDPA, the court may not grant relief if it would have decided an evidentiary question differently. The court may only grant relief if a petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard. Petitioner has not provided any evidence, much less clear and convincing evidence, that the state court's factual determinations regarding the probative or prejudicial character of the evidence are unreasonable.

Similarly, Petitioner has not shown that the state court's admission of Ms. Rospierski's testimony under Michigan Rule of Evidence 403 is contrary to, inconsistent with, or an unreasonable application of clearly established federal law. Indeed, he cannot. The Sixth Circuit has determined that "[t]he Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of relevant evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012).

C. The jury instruction regarding expert testimony

The trial court read Michigan Criminal Jury Instruction 20.29 to the jury. That instruction, titled "Limiting Instruction on Expert Testimony (in Child Criminal Sexual Conduct Cases)," provides:

(1) You have heard [name expert]'s opinion about the behavior of sexually abused children.

(2)     You should consider that evidence only for the limited purpose of deciding whether [name complainant]'s acts and words after the alleged crime were consistent with those of sexually abused children.

(3)     That evidence cannot be used to show that the crime charged here was committed or that the defendant committed it. Nor can it be considered an opinion by [name expert] that [name complainant] is telling the truth.

Mich. Model Criminal Jury Instruction 20.29. The court read the model instruction filling in the names of the expert and complainant and changing the reference from "crime" to "crimes." (Trial Tr. II, ECF No. 6-5, PageID.662.)

Petitioner complains that the instruction invites the jury to consider the expert testimony to see whether DB's behavior was consistent with that of abused children. (Pet'r's Br. on Appeal, ECF No. 6-8, PageID.763.) Petitioner further claims that such an invitation is improper under *People v. Peterson*, 537 N.W.2d 857 (Mich. 1995), because it comes too close to testifying that the particular child is a victim of sexual abuse. (*Id.*)

The Michigan Court of Appeals concluded that Petitioner had waived the issue because his counsel had not only failed to object to the instruction, but had also specifically approved the instructions as read. (Mich. Ct. App. Op., ECF No. 6-8, PageID.702-703.) Respondent contends that Petitioner's waiver of the issue constitutes a procedural default and bars federal court review.

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). If a petitioner procedurally

defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks v. Straub,* 377 F.3d 538, 551-52 (6th Cir. 2004).

Petitioner claims that the cause for his default was the ineffective assistance of his trial counsel (which is also habeas issue IV). Because determining whether trial counsel's assistance was effective requires an analysis of resulting prejudice,[1] evaluating Respondent's claim of procedural default necessarily involves consideration of the merits of Petitioner's claim.

Federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-

---

[1] In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because the Court will be required to consider the merits of the issue anyway, the procedural default issue raises more questions than the case on the merits. Under these circumstances, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

Petitioner's claim fails on the merits because he relies on a mischaracterization of the holding in *Peterson*. Petitioner's suggestion that *Peterson* forbids inviting the jury to consider the expert testimony to see whether the victim's behavior was consistent with that of abused children, is exactly the opposite of *Peterson*'s holding. Writing for the majority, Justice Mallett states: "[W]e clarify our decision in *Beckley* and now hold that (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of sexual abuse to rebut an attack on the victim's credibility." *Peterson*, 537 N.W.2d at 859. Accordingly, Petitioner's argument is untenable.

V.    Prosecutorial misconduct

Petitioner next contends that he was denied a fair trial by prosecutorial misconduct.  Petitioner describes three categories of alleged misconduct:

(1)    The prosecutor introduced irrelevant and highly prejudicial evidence.

(2)    The prosecutor made improper statements in opening and closing argument.

(3)    The prosecutor elicited testimony from Detective Smigielski regarding the credibility of DB's mother.

(Pet'r's Br. on Appeal, ECF No. 6-8, PageID.765-771.)   Petitioner claims that the instances of improper prosecutorial behavior rendered his trial fundamentally unfair, in violation of his due process rights.  The Michigan Court of Appeals either rejected Petitioner's claims of misconduct or determined that the error was harmless.

A.    Irrelevant and prejudicial evidence

Petitioner provides a laundry list of what he contends is irrelevant or prejudicial information the prosecutor presented as evidence at Petitioner's trial.[2] The Michigan Court of Appeals rejected the premise of Petitioner's argument:

Caldwell contends that the prosecutor committed misconduct by arguing several pieces of irrelevant evidence in her opening and closing

---

[2] Petitioner contends it was improper for the prosecutor to reference or present evidence regarding: how it made the children feel to not tell what had happened; the behavior of children who had been abused; Petitioner's statement to Detective Smigielski; information about forensic interviewing; the reaction of sexually abused children; reasons a child might delay reporting, including threats; steps of the police investigation; Detective Smigielski's observations regarding DB's mother's reactions to police questioning; comments regarding and interpretations of Petitioner's body language during his police interview; Detective Smigielski's conclusion that Petitioner changed his story; testimony that DB's mother was untruthful at first; and information regarding Petitioner's use of a dildo.  (Pet'r's Br. on Appeal, ECF No. 6-8, PageID.765-766.)

statements. We conclude that the prosecutor's actions were good-faith attempts to admit relevant evidence.

When the defendant's argument is an evidentiary issue framed as a prosecutorial misconduct issue, this Court determines whether the prosecutor acted in good faith. *Dobek*, 274 Mich App at 70–71. "A prosecutor's good-faith effort to admit relevant evidence does not constitute misconduct." *Id*. at 70. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. MRE 401.

We have reviewed each of Caldwell's assertions of prosecutorial misconduct by the admission of irrelevant evidence and conclude that each piece of evidence made a fact of consequence more or less probable. There is no indication in the record that the prosecutor acted in bad faith in any attempt to admit evidence. Therefore, Caldwell has not shown plain error regarding the prosecutor's admission of evidence.

(Mich. Ct. App. Op., ECF No. 6-8, PageID.703.) This Court is bound by the court of appeals' determination that the evidence is relevant as a matter of state law.

The Sixth Circuit has held that, to prevail, Petitioner must show that the prosecutor's conduct infected his trial with unfairness:

As [Petitioner's] only claim in this appeal is premised on prosecutorial misconduct, he must show that the Michigan Court of Appeals' decision on direct review was an unreasonable application of *Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). *Darden* held that the relevant question in a prosecutorial-misconduct case is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181, 106 S. Ct. 2464 (internal quotation marks omitted). "[T]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing in prosecutorial misconduct cases is necessarily imprecise." *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (internal quotation marks and alterations omitted). Indeed, because "the *Darden* standard is a very general one," courts have "more leeway ... in reaching outcomes in case-by-case determinations." *Parker*, —— U.S. ——, 132 S. Ct. 2148, 2155 (2012) (internal quotation marks omitted).

21

*Key v. Rapelje*, 634 F. App'x 141, 146 (6th Cir. 2015).  In *Key*, the petitioner made the same argument Petitioner makes here – the prosecutor introduced irrelevant and prejudicial testimony to mislead the jury.  *Id*.  The Michigan Court of Appeals had rejected Key's claim because it concluded the evidence was admissible.  *Id*. ("The Michigan Court of Appeals ruled that this category of claims did not involve prosecutorial misconduct because the prosecutor 'did not interject inflammatory evidence or arguments into the case merely to evoke prejudice'; rather, 'the evidence of defendant's uncharged sexual offenses [was] admissible pursuant to' the Michigan Rules of Evidence.")

The Sixth Circuit recognized that the claim, as Key had raised it, was not cognizable on habeas review:

> Although he phrases it as a prosecutorial-misconduct claim, Key "has offered nothing more than his disagreement with the [Michigan court's] ruling that the 'other acts' evidence was properly admitted." *Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007).  This personal disagreement "is not cognizable on federal habeas review, inasmuch as it involves no constitutional dimension." *Id*.  Indeed, a prosecutor "may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  This is true regardless of "whether or not the ruling itself was correct." *Frazier v. Huffman*, 343 F.3d 780, 792 (6th Cir. 2003).

> The trial judge allowed the prosecution to introduce evidence about Y.K. and A.K. Key challenged that ruling, but it was upheld on appeal by the Michigan Court of Appeals.  Even if the Court of Appeals had found the evidentiary ruling improper, however, the prosecutor would not have committed misconduct by relying on that ruling.  At bottom, Key is contending that the judge's ruling was in error, but he cannot challenge this evidentiary ruling through federal habeas corpus. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In

conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

*Key*, 634 F. App'x at 146-47. Petitioner's claim, like Key's, is not cognizable. It certainly does not violate clearly established federal law for a prosecutor to seek the admission of evidence that is relevant and admissible as a matter of state law.[3]

### B. Improper statements in opening and closing arguments

Petitioner complains about the prosecutor's arguments in two respects: first he contends she was appealing to the jurors' sympathy; and second, she argued facts not in evidence. Petitioner's claims are somewhat cryptic, but his complaints center on the prosecutor's arguments that DB's mother and family failed to protect him, that it was difficult for DB to testify, that DB was mad because he was told not to reveal the sexual abuse, that DB's background and environmental "damage" would determine what he could talk about and remember, that DB and his mother were worried that there could be trouble because they did not tell when it first happened, and that factors influencing sexually abused kids could influence what DB would be able to come into court and do. The Michigan Court of Appeals rejected Petitioner's arguments:

> Caldwell contends that the prosecutor improperly appealed to the jury's sympathy. We disagree.
>
> A prosecutor may not invite jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civil duty. *Unger*, 278 Mich App at 237. And a prosecutor may not argue the effect of testimony that was not in evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). But a prosecutor may argue all the facts

---

[3] *See* § IV C, *supra*.

in evidence and reasonable inferences from the facts that relate to the prosecutor's theory of the case. *Unger*, 278 Mich App at 236.

In this case, the victim's testimony contained several inconsistencies. Several times, the victim testified that he did not know the answer to a question, only to answer a similar question later. The victim also testified that the incident made him feel "mad" and that his mother told him that he should not tell anyone about it. Johnston testified that she told the victim that he should not tell anyone about it.

In her closing argument, the prosecutor contended that it was difficult for the victim to testify about sexual abuse. The prosecutor also contended that the victim's mother should have, but did not, protect him from that abuse. We have reviewed the prosecutor's statements in context and conclude that they did not encourage the jury to decide the case on the basis of sympathy. Rather, the prosecutor argued this evidence as it related to the victim's credibility. Caldwell has not shown that this alleged misconduct constituted plain error.

(Mich. Ct. App. Op., ECF No. 6-8, PageID.704.)

It is generally improper for a prosecutor to make comments during argument for the purpose of inflaming the passions of the jury. *Gumm v. Mitchell*, 775 F.3d 345, 377 (6th Cir. 2014) (citing *Slagle v. Bagley*, 457 F.3d 501, 518 (6th Cir. 2006)). But the fact that a comment might engender sympathy does not make it improper. " '[A] prosecutor illicitly incites the passions and prejudices of the jury when he calls on the jury's emotions and fears – *rather than the* evidence – to decide the case.' " *Clarke v. Warren*, 556 F. App'x 396, 407 (6th Cir. 2014) (quoting *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008) (emphasis added). Prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). A prosecutor is permitted to "summarize the evidence and comment upon both its

quantitative and qualitative significance." *United States v. Drake*, 885 F.2d 323, 324 (6th Cir. 1989).

The Michigan Court of Appeals conducted its analysis of Petitioner's claim consistently with clearly established federal law. The court considered whether the prosecutor was inflaming the jury's passions or simply commenting on the evidence. The court concluded it was the latter. The court's factual determinations in support of that conclusion are reasonable on the record before this Court. Petitioner's claim that his trial was rendered fundamentally unfair by the prosecutor's comments during argument is without merit.

C.    Detective Smigielski's testimony

Petitioner complains that Detective Smigielski testified regarding Petitioner's credibility. Specifically, Petitioner claims the detective reported that Petitioner was not telling the truth during his interview when Petitioner denied the incident with DB because Petitioner would not look the detective in the eye and Petitioner began to stutter when he was talking about an incident with DB. (Trial Tr. II, ECF No. 6-5, PageID.583-585.)    Petitioner also complains about Detective Smigielski's testimony, as follows:

Q:    And when you were talking to [DB's mother]—

A:    Yes.

Q:    –[DB's] mother—

A:    Yes.

Q:    –can you break that interview up in to two different segments in any fashion?

A:    Yes.

Q:    What would those segments be?

A:    Well, the first segment was is that she was telling me a story. And I could tell that she was not being truthful with me under what ever circumstances she wanted to not. Later on after doing some talking with her and calming she down she was able to tell me—

MR. SAMMIS:    Objection. Hearsay.

MS. SMITH:    We haven't even gotten there yet, but—

MR. SAMMIS:    Well he's starting to say what—

MS. SMITH:    Right.

MR.SAMMIS:    –she told him.

MS. SMITH:    There was a second part of the interview?

THE WITNESS:    Right. I'm—

THE COURT:    Well without—continue to answer the question. Just don't tell us what she told you.

BY MS. SMITH:

Q:    So the initial part was what you believed to be—

A:    Correct.

Q:    –untruthful?

A:    Correct.

Q:    You said that. And then there was a further interview when you calmed her down and then you guys talked?

A:    Correct.

26

Q:     All right.  And this part that Mr. Sammis talks about, about whether she believed the kids or not, which part of the interview as that?  First segment or second segment?

A:     That was in the first segment.

Q:     Okay.

(*Id.*, PageID.600-602.)  Petitioner argues that the prosecutor committed misconduct in both instances because she elicited testimony from one witness regarding the credibility of others.

The Michigan Court of Appeals concluded that Petitioner mischaracterized the testimony regarding Petitioner and that any error was harmless with respect to the testimony regarding DB's mother:

> Caldwell contends that the prosecutor improperly asked a witness to comment on the credibility of another witness.  We conclude that one of the prosecutor's lines of questioning was improper, but the error did not affect Caldwell's substantial rights.
>
> The prosecutor may not ask a witness to provide an opinion on the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985).  In this case, the prosecutor did not ask Detective Smigielski to opine about Caldwell's truthfulness.  The prosecutor asked Detective Smigielski why he continued to interrogate Caldwell after Caldwell denied that the incident occurred.  Detective Smigielski testified that he paid attention to body language, and Caldwell did not look him in the eye, so he continued the interview because he wanted to "kind of step it up a little bit[.]"  We conclude that Caldwell has not shown plain error in the prosecutor's question.
>
> However, the prosecutor did ask Detective Smigielski to divide [DB's mother's] interviews into segments, and then asked during which segment Detective Smigielski believed that [she] was being truthful. Detective Smigielski opined that [she] was not truthful during the first portion of the interview. The prosecutor should not have asked Detective Smigielski to comment on [her] credibility.  However, since [DB's mother] testified that she was not initially truthful in her interview with Detective Smigielski, we conclude that this error did not affect

Caldwell's substantial rights. It is not reasonably likely that Detective Smigielski's opinion of [her] truthfulness affected the outcome of Caldwell's trial.

(Mich. Ct. App. Op., ECF No. 6-8, PageID.704.)

In *United States v. Dickens*, 438 F. App'x 364 (6th Cir. 2011), the Sixth Circuit described two distinct types of troublesome trial testimony regarding the credibility of others. The first type occurs when a witness testifies about the credibility of the trial testimony of another witness. *Dickens*, 438 F. App'x at 369-370. The court concluded that, because "credibility determinations are meant for the jury, not witnesses," a prosecutor's questions soliciting a witness' opinion regarding the credibility of the trial testimony of another witness were improper. *Id.* at 370. The second type occurs when a witness testifies about the credibility of a witness' or defendant's statements prior to trial. *Id.* at 372. In *Dickens*, both types of troublesome credibility testimony were introduced into evidence. The Sixth Circuit concluded that neither type of testimony prejudiced Dickens and, therefore, Dickens was not entitled to relief.

The *Dickens* court's analysis cites only the decisions of other federal circuit courts of appeals. Neither the *Dickens* court, nor Petitioner, cite any United States Supreme Court precedent, the only permissible source of clearly established federal law under the AEDPA.[4] Thus, Petitioner has failed to demonstrate that the state

---

[4] Petitioner cites only state authorities. Moreover, in each of Petitioner's cited cases, the state courts determined that even if such questions were improper, relief was not warranted. *See People v. Loyer*, 425 N.W.2d 714 (Mich. Ct. App. 1988); *People v. Dobek*, 732 N.W.2d 546 (Mich. Ct. App. 2007); *People v. Map*, 624 N.W.2d 227 (Mich.

court's determination is contrary to, or inconsistent with, clearly established federal law.

Petitioner has also failed to present clear and convincing evidence to call into question the factual determinations of the Michigan Court of Appeals. DB's mother testified that she had not told Detective Smigielski the truth when he first began to interview her regarding the incident. (Trial Tr. I, ECF No. 6-4, PageID.523-527.) Detective Smigielski was not opining regarding DB's mother's credibility, he was simply stating a fact that DB's mother had already acknowledged. Thus, to the extent the testimony was improper, it did not prejudice Petitioner.

Similarly, there is ample record support for the state court's determination that Detective Smigielski was not asked to, and did not, opine regarding the credibility of Petitioner. The detective described his interview of Petitioner at the police station; he did not express any opinion as to whether Petitioner's responses were credible. (Trial Tr. II, ECF No. 6-5, PageID.582-592.) The prosecutor did not elicit improper testimony from Detective Smigielski as alleged by Petitioner. Thus, Petitioner's claim has no merit.

VI.    Ineffective assistance of trial counsel

Petitioner contends that his trial counsel rendered constitutionally ineffective assistance because he failed to ask for a child witness expert and he failed to raise

---

Ct. App. 2001); *People v. Messenger*, 561 N.W.2d 463 (Mich. Ct. App. 1997); *People v. Buckey*, 378 N.W.2d 432 (Mich. 1985).

the other issues identified above.[5]   The Michigan Court of Appeals determined

Petitioner had failed to demonstrate ineffective assistance:

> Caldwell contends that defense counsel did not effectively assist him at trial because counsel failed to call an expert witness to testify about the reliability of child witnesses.  We conclude that Caldwell has not shown that counsel acted unreasonably.

> A criminal defendant is constitutionally entitled to the effective assistance of counsel.   US Const, Am VI; Const 1963, art 1, § 20.  Generally, a defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law."  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  But, a defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his counsel was ineffective.  *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000).  Caldwell has not done so in this case.  Therefore, our review is limited to mistakes apparent from the record.  *See Id.*

> To prove that defense counsel provided ineffective assistance, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant.  *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302–303; 521 NW2d 797 (1994).   A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different.  *Pickens*, 446 Mich at 312.   The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy.  *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).  Defense counsel's decisions to call and investigate witnesses are matters of trial strategy.  *Id*.

> In this case, the record indicates that defense counsel focused on impeaching the existing witnesses, including Rospierski.   Counsel

[5] The Michigan Court of Appeals refused to consider counsel's failure to raise the other issues because the court concluded Petitioner had abandoned those claims of ineffective assistance.  (Mich. Ct. App. Op., ECF No. 6-8, PageID.705.)  The court of appeals concluded that Petitioner simply failed to support his "other issues" claims by limiting his argument to the following sentence:  "The mistakes by Defendant's trial attorney were substantially prejudicial as has been argued in previous questions."  (Pet'r's Br. on Appeal, ECF No. 6-8 PageID.775.)

focused on the inconsistencies between the witnesses' testimonies and whether it was probable that Caldwell would have sexually assaulted the victim with the bedroom door open and a clear view into the bedroom from a window that faced onto the back porch. We are not convinced that counsel's strategic decision was unreasonable.

Further, without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial. See *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). There are no facts in the record to support Caldwell's contention that an expert on child witnesses would have testified in his favor. We conclude that Caldwell has not demonstrated that counsel rendered ineffective assistance.

(Mich. Ct. App. Op., ECF No. 6-8, PageID.705.)

The clearly established federal law regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). As noted by the Michigan Court of Appeals, in *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine

whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals decision expressly relied upon, and is entirely consistent with, *Strickland*. The court of appeals determined that Petitioner's claim failed on both prongs. It concluded that counsel's trial strategy appeared to be reasonable and that Petitioner failed to establish prejudice because there was nothing in the record to support Petitioner's suggestion that an expert would have helped his case.

The state court's determinations are not unreasonable on the record before this Court. "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. Here, Petitioner's failure to demonstrate prejudice is evident. There is nothing in the record as to what testimony an expert might have provided. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice."). Petitioner offers only speculation; that is manifestly insufficient.

Petitioner's brief argument regarding his "other claims" of ineffective assistance, *see* note 5, *supra*, also fail. Petitioner contends that counsel was ineffective for failing to raise the issues Petitioner raises above. As discussed above, however, those issues have no merit. Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'") "Omitting meritless arguments is neither

professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Petitioner is not entitled to habeas relief for ineffective assistance of counsel.

VII.  Insufficient notice

Finally, Petitioner contends that the information failed to provide him with constitutionally sufficient notice of the crime with which he was charged because it spanned a time frame of nearly three years. The Michigan Court of Appeals did not consider this issue because Petitioner did not raise it until he filed his application for leave to appeal in the Michigan Supreme Court.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Petitioner has failed to exhaust this issue, which prevents the Court

from granting relief. The Court may also deny such relief on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See, e.g., In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id*. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Petitioner contends that his ability to prepare a defense was compromised by the length of the period alleged in the information. In *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), the Sixth Circuit addressed and rejected this argument:

> This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements. *See Isaac v. Grider*, 2000 WL 571959 at *5 (four months); *Madden v. Tate*, 1987 WL 44909, at *1-*3 (6th Cir. 1987) (six months); *see also Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir. 1992) (six months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (three years); *Parks v. Hargett*, 1999 WL 157431, at *4 (10th Cir. 1999) (seventeen months). Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved. The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse. Valentine's claims regarding the lack of time- and date-specific counts therefore fail.

*Valentine*, 395 F.3d at 632; *see also Coles v. Smith*, 577 F. App'x 502, 510 (6th Cir. 2014) (holding that state court did not unreasonably conclude that the charging document, which alleged assaults that took place on unspecified dates over a three-and-a-half year period, provided petitioner sufficient notice of the charges); *Bruce v. Welch*, 572 F. App'x 325, 330-31 (6th Cir. 2014) (holding that state court did not unreasonably conclude that the charging document, which alleged assaults that took place on unspecified dates over a four year period, provided sufficient notice of the charges); *Stevenson v. Scutt*, 531 F. App'x 576, 580 (6th Cir. 2013) (state prisoner was not entitled to federal habeas corpus relief on claim that Michigan court's determination that he had adequate notice of charge for criminal sexual conduct, despite allegation in indictment that offense was committed in "winter 2004," rather than winter of 2004–2005, where prisoner failed to identify any Supreme Court

precedent upon which he relied, nor cited to any case with fact pattern analogous to his own).

To prevail, Petitioner must demonstrate that the Michigan Supreme Court's rejection of his claim is contrary to, or is an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that it is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Petitioner's argument does not meet that standard. He fails to identify any United States Supreme Court decisions that support the proposition that an information alleging one instance of three sexual penetrations that occurred during a window of approximately three years fails to provide sufficient notice such that the accused might defend himself. The Sixth Circuit authorities cited above indicate that there are no such Supreme Court decisions.

Petitioner has failed to establish that the state court's rejection of his claim that the notice provided by the information was constitutionally insufficient is contrary to or an unreasonable application of clearly established federal law. Accordingly, his habeas challenge to sufficient notice is without merit.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).

Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Date: October 5, 2017                     /s/ Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen (14) days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).